IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCELLA LOUIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-1959-N |
| | § | |
| SHAUN LUCAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Shaun Lucas' motion to dismiss [12].  For the reasons set forth below, the Court grants in part and denies in part the motion.

### I. ORIGINS OF THE DISPUTE

This case concerns a lethal law enforcement shooting in October 2020.  On October 3, 2020, Jonathan Price visited a Kwick Check in Wolfe City, Texas.[1]  Compl. ¶¶ 8–9 [1]. As he entered the store, he bumped into an exiting customer, leading to a brief altercation. *Id*. ¶¶ 11–13.  As a result, the police were called, and Officer Shaun Lucas arrived shortly afterward. *Id*. ¶¶ 14–15.  Price greeted Officer Lucas and attempted to shake his hand, but Officer Lucas refused Price's gesture and stated that he would detain Price because he appeared to be intoxicated. *Id*. ¶¶ 15–16.  Price refused, claiming that he had done nothing wrong, and began walking away from Officer Lucas. *Id*. ¶ 17.  Price was unarmed and did

---

[1] For purposes of this Order, the Court accepts the well-pleaded allegations of the complaint as true.

not take any actions or make any movements that would indicate aggression towards Officer Lucas.  *Id.*  ¶¶ 19–20.   To detain Price, Office Lucas used his taser, causing Price to lurch forward due to neuromuscular incapacitation.  *Id.* ¶¶ 18, 21.   Officer Lucas then fired four rounds into Price's chest, ultimately causing his death.   *Id.* ¶¶ 22, 27.

Plaintiff Marcella Louis is the mother of Price and the representative of his estate. Louis filed the original complaint alleging two causes of action: (1) Fourth Amendment excessive force claims against Lucas; and (2) survival claims under Texas state law against Wolfe City and Lucas.  *Id.* ¶¶ 29–40.  Louis voluntarily dismissed Wolfe City from the lawsuit.  Notice of Dismissal 1 [5].  Officer Lucas now moves to dismiss the complaint.

## II.  RULE 12(b)(6) LEGAL STANDARD

When addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted).  Thus, a district court may properly consider contracts or other documents that are not attached to the complaint, but are referenced within it and attached to a defendant's Rule 12(b)(6) motion.  *See Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

A viable complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this

MEMORANDUM OPINION AND ORDER – PAGE 2

standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted).

### III.  LEGAL STANDARD FOR QUALIFIED IMMUNITY

"Qualified immunity is a defense available to public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Tex. Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Because Lucas has properly asserted qualified immunity, the Court must assess Louis' claims to determine (1) whether she has alleged a violation of a constitutional right, and if so, (2) whether that right was "clearly established" at the time of the public official's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At the motion to dismiss stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"[2] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

## IV. SECTION 1983 CLAIMS

To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (internal citations omitted).

To establish that Lucas violated the Fourth Amendment, Louis must allege that Price "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).

---

[2] Lucas cites *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc) for the proposition that Louis must respond to the factual allegations offered in the answer to overcome qualified immunity. This interpretation overstates the case's holding, which merely allowed the district court the discretion to order the plaintiff to file a reply tailored to an answer pleading the qualified immunity defense. *Schultea*, 47 F.3d at 1433–1434. The Court does not find a reply necessary, as the complaint's factual allegations do not require additional elaboration.

MEMORANDUM OPINION AND ORDER – PAGE 4

"Crucially, this analysis must be objective: To make out a Fourth Amendment violation . . . 'the question is whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 397) (cleaned up). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. With "careful attention to the facts and circumstances of each particular case," the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "But even an officer who may lawfully use or threaten force must appropriately calibrate the amount of force he employs to the need for force he confronts." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). When detaining an uncooperative arrestee, officers must properly use "measured and ascending actions that correspond to [the arrestee's] escalating verbal and physical resistance." *Joseph*, 981 F.3d at 332–33 (quoting *Poole*, 691 F.3d at 629) (cleaned up).

### A.  Lucas' Use of a Taser Constituted Excessive Force

The *Graham* factors demonstrate that Lucas' use of his taser on Price, as alleged in the complaint, violated the Fourth Amendment.  First, the "severity of the crime at issue" was minor.  Police were called to the Kwick Check regarding a "brief tussle" that ended without injury, and Lucas intended to detain Price due to his apparent intoxication.  Compl. ¶¶ 11–14, 16.  Regardless of whether Lucas suspected Price of being involved with an assault or of being publicly intoxicated, both alleged crimes were minor.  Next, the "immediate threat to the safety of the officers or others" was minimal.  Price did not have any weapons or objects that could pose a danger to Lucas and took no actions to indicate aggression or convey a threat to any person's physical safety.  *Id*. ¶¶ 19, 20.  Lastly, Price took no actions indicating active resistance.[3]  Although Price walked away and refused the verbal detainment, Price did not resist Lucas physically or fail to comply with lesser uses of force or coercion.  *See id*. ¶¶ 17–20.   At worst, Price was merely argumentative and uncooperative, but had not engaged in any physical acts of resistance.  Passive resistance does not justify the use of a taser.  *Cloud v. Stone*, 993 F.3d 379, 385 (5th Cir. 2021) ("By contrast, we have found excessive force when officers tased someone offering only passive resistance or no resistance at all.").  Here, Lucas failed to use "measured and ascending actions" such as "physical skill" or "negotiation" prior to deploying his taser.  *See*

---

[3] Although the Fifth Circuit has noted that "the line between active and passive resistance is sometimes hazy and must be judged in light of the 'necessarily fact-intensive' nature of the inquiry," *Betts v. Brennan*, 22 F.4th 577, 583 (5th Cir. 2022) (citing *Deville*, 567 F.3d at 167), the Court, at the motion to dismiss stage, relies only on the complaint's allegations. The parties have referenced video footage of the incident, *e.g.*, Pl.'s Resp. Br. 5 [17], but neither party has tendered an authenticated version to the Court.

MEMORANDUM OPINION AND ORDER – PAGE 6

*Trammell v. Fruge*, 868 F.3d 332, 342 (5th Cir. 2017) ("This Court has several times found that the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need."); *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (explaining that a reasonable jury could find that the degree of force used was not justified when an officer engages in minimal negotiation with a suspect and instead quickly resorts to force). Accordingly, Lucas' immediate and drastic escalation in force was unreasonable and violated Price's right to be free from excessive force.

Furthermore, the Fifth Circuit's decision in *Ramirez v. Martinez* clearly established that Lucas' actions, as alleged in the complaint, amounted to excessive force. 716 F.3d 369 (5th Cir. 2013). In *Ramirez*, the court held that an officer used excessive force when tasing an individual who had exchanged angry words with officers, failed to comply with an order to turn around and place his hands behind his back, and pulled his arm away from an officer who attempted to grab his hand. *Id*. at 372, 378. Here, Price exchanged a friendly greeting with Lucas, stated that he would not be detained, and walked away.[4] Compl. ¶¶ 15–17. In comparison to *Ramirez*, Price's verbal interactions were less aggressive, his physical resistance was less direct, and Lucas had not utilized ascending levels of force as the officer did in *Ramirez* prior to deploying the taser. Accordingly, taking the complaint's allegations as true, Lucas' use of the taser violated clearly established law within the Fifth Circuit.

---

[4] Lucas provides a contradictory narrative of the events leading up to his decision to tase Price. *See* Def.'s Answer ¶ 24 [14]. However, weighing or reconciling the parties' factual pleadings is not appropriate at this stage. *See* n.1 *supra*.

### B.  Lucas' Use of Lethal Force Violated the Fourth Amendment

The Court concludes that Lucas' decision to fire four shots into Price's chest was an "obvious" instance of excessive force in light of the factors set forth in *Graham*. Courts must consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Cooper*, 844 F.3d at 522 (quoting *Graham*, 490 U.S. at 396). As noted above, all of these factors strongly favor Price.  No reasonable officer would have deployed a taser on an individual such as Price — i.e., an individual who (1) was being detained for a minor crime such as assault or public intoxication; (2) had not given any indication that he was armed, thus presenting no immediate threat; and (3) had displayed, at most, passive resistance, such as stating that he would not be detained and walking away — and then further escalate the situation by firing his weapon as that individual lurched due to neuromuscular incapacitation.  Even if Lucas' use of the taser had been justified to detain Price, lethal force was certainly not appropriate once Price, an unarmed individual, had been incapacitated and could not flee.  *See Tennessee v. Garner*, 471 U.S. 1, 3 (1985) (holding that deadly force could not be used on a fleeing suspected felon who did not appear to be armed or otherwise dangerous); *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015) ("[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.") (citation omitted).  Accordingly, the Court denies Lucas' motion to dismiss the section 1983 claims based on qualified immunity.

## V. STATE LAW CLAIMS

Under Texas Civil Practice & Remedies Code § 101.106, "the filing of a suit …

against a governmental unit . . . immediately and forever bars any suit or recovery by the

plaintiff against any individual employee of the governmental unit regarding the same

subject matter."  TEX. CIV. PRAC. & REM. CODE §101.106(a).  Lucas argues that Louis

named Wolfe City in the original complaint, and therefore wrongful death claims against

him under state law are forever barred.  Louis has not responded to this argument, and

accordingly the Court dismisses all state-law claims against Lucas.

### CONCLUSION

Because the complaint's allegations state a claim for relief, Louis' section 1983

claims may proceed.  However, because Louis sued Wolfe City for the same conduct, the

Court must dismiss the state-law survival claims against Lucas.


Signed July 17, 2023.


David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 9